ORIGINAL

# In the United States Court of Federal Claims

No. 17-1830C
Filed: August 20, 2018

FILED
AUG 20 2018
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEELA H. SHERMAN, Plaintiff, v. UNITED STATES, Defendant. | * | Pro Se Plaintiff; Motion To Dismiss; Subject Matter Jurisdiction; Federal Retirement Benefits Claim. |

**Leela H. Sherman**, pro se, Laguna Beach, CA.

**Joshua A. Mandlebaum**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant. With him were **Franklin E. White, Jr.**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Chad A. Readler**, Acting Assistant Attorney General.

## OPINION

**HORN, J.**

## FINDINGS OF FACT

On November 20, 2017, pro se plaintiff Leela H. Sherman, who is a former employee of the Internal Revenue Service (IRS), filed a complaint in this court. The plaintiff claims that "[t]his is an action for eligible annuity of the plaintiff and her spouse" and that "[h]er only claim is for estimate of her annuity." The plaintiff indicates that she is "currently receiving FECA [Federal Employees' Compensation Act] benefits" from the Office of Workers' Compensation Programs (OWCP). The plaintiff indicates that she is not currently receiving an annuity under the Federal Employees Retirement System (FERS), but that the plaintiff seeks an "estimate" of her FERS retirement annuity so that plaintiff may make "a meaningful decision" regarding whether she wants to continue receiving FECA benefits or receive FERS retirement benefits instead.

7016 3010 0000 4308 4744

The plaintiff states that she previously served as a "Senior Internal Revenue Agent" with the IRS and alleges that a "TRE"[1] supervisor, who the plaintiff alleges was not the plaintiff's supervisor, "negligently generat[ed]" a Standard Form 50 (SF 50), Notice of Personnel Action, and a Standard Form 52 (SF 52), Request for Personnel Action,[2] separating the plaintiff from her employment with the IRS "on or around Nov. 2011."[3] Both the plaintiff and the defendant indicate that the SF 50 document at issue was the document which separated plaintiff from her IRS employment, that the document was generated in November 2011, and that the effective date of the SF 50 was retroactively set to January 3, 2010. The plaintiff claims that she did not receive notice that the IRS would generate the SF 50, thereby separating plaintiff from her employment, until on or around November 28, 2011, when the plaintiff alleges that "third party record Keeper TSP [Thrift Savings Plan] fund" sent the plaintiff a letter which informed her of the retroactive separation. The plaintiff argues that the SF 50 "den[ied] her and her spouses [sic] the protection to their rights of benefits," and that, consequently, the defendant "separat[ed] the plaintiff without following any due process."[4] The plaintiff further states that the SF 50 "suppressed the fact that the plaintiff was under [sic] workers' compensation program" at the time plaintiff received notice of her separation on or around November 28, 2011, and that, at the time of notification, the plaintiff "should have been placed as on Leave without pay status." (capitalization in original).

The plaintiff alleges in her complaint that, prior to her obtaining knowledge of the retroactive separation on or around November 28, 2011, the plaintiff submitted an application for disability retirement, which the plaintiff states "was ignored by the agency."[5] According to the plaintiff, she suffered a workplace injury in 2008 and had surgery on January 15, 2009, followed by two months of "light duty" employment, during which time

---

[1] The plaintiff states that the defendant is "the United States of America acting by and through the Department of Treasury and Office of Personnel Management" (OPM), but plaintiff's complaint interchangeably "refer[s] to the Defendant as the 'United States', 'TRE', 'OPM' or 'Defendant'." The plaintiff does not define "TRE," but the plaintiff appears to use "TRE" as an abbreviation for the Department of the Treasury.

[2] The plaintiff's complaint initially refers to a "SF 50 and SF55" and then subsequently characterizes the forms as a "SF 50" and a "SF52." Because plaintiff only once mentions a "SF55," plaintiff's reference to a "SF55" may have been a mistake.

[3] According to the defendant, the IRS generated the SF 50 on November 21, 2011.

[4] In her opposition to defendant's motion to dismiss, the plaintiff states that she is not asserting a due process claim against the defendant.

[5] The plaintiff's complaint does not indicate when or to which office she allegedly submitted her application for disability retirement. The plaintiff's opposition to defendant's motion to dismiss only states that the "agency separated her [plaintiff] while she was attempting to obtain disability retirement (by submitting her OPM disability retirement form with the manager for onward submission)."

the plaintiff was compensated by the OWCP. The plaintiff claims that, "[w]hile her timely application for disability appears to have been not processed by the agency, the SF 50 document deprived the plaintiff's ability to apply for disability since her separation was about 2 years advanced retroactively." The plaintiff states that she has taken steps to "set her service record right," but that "[t]he agency insisted that the action is warranted because of an agreement the plaintiff had with the agency settling previous non [sic] selection and discrimination cases."

According to plaintiff, she has contacted the OPM "many times from 2012" regarding her retirement benefits. The plaintiff alleges that on January 30, 2012, she received a letter from the OPM that placed her in the "wrong retirement system," and asserts that the January 30, 2012 letter stated that "the plaintiff belonged to CSRS [Civil Service Retirement System] and giving service dates and contributions that were all wrong and substantially distorting her benefits under FERS." The plaintiff claims that she contacted the OPM regarding this alleged error, but did not receive a response from the OPM. The plaintiff also states that she has previously contacted the OPM by phone and by mail regarding her retirement annuity estimate but alleges that the "OPM has not answered to any of her inquiries."

After the IRS separated the plaintiff from her employment in November 2011 with a retroactive separation date of January 3, 2010, the plaintiff challenged her separation before the Merit Systems Protection Board (MSPB), alleging that she had not voluntarily resigned from the IRS. See Sherman v. Dep't of the Treasury, No. SF-0752-12-0193-I-1, 2012 WL 682673 (M.S.P.B. Feb. 13, 2012). The MSPB administrative judge found that the plaintiff and her employer, the IRS, had entered into a Stipulation for Compromise (Stipulation) in May 2009. See id. The MSPB administrative judge noted that the Stipulation contained a clause stating that the plaintiff would "retire or resign from the IRS on or about December 26, 2009, but not later than the start of the first pay period of calendar year 2010, as a Revenue Agent, GS 14-3." Id. (quoting the Stipulation). The administrative judge also noted that the clause in the Stipulation stated that the plaintiff's agreement to retire was "irrevocable and supported by valuable consideration," and, if the plaintiff failed to retire "on or about December 26, 2009, but not later than the start of the first pay period of calendar year 2010," the plaintiff's "signature on this document shall serve as her resignation from employment with the IRS." Id. (quoting the Stipulation). The administrative judge determined that the plaintiff had failed to retire by the first pay period of the calendar year of 2010, as the plaintiff was required to do under the Stipulation. See id. According to the administrative judge, after the plaintiff failed to retire, "the agency processed a resignation on her behalf" in November 2011 and "separated her from the service [IRS] retroactive to January 3, 2010." Id. Ultimately, the MSPB administrative judge concluded that the MSPB did not have jurisdiction over the plaintiff's claim because the plaintiff had resigned voluntarily under the terms of the Stipulation. See id. The plaintiff filed a petition for the MSPB to reconsider its initial decision, which the MSPB denied. See Sherman v. Dep't of the Treasury, 118 M.S.P.R. 433 (2012), aff'd, Sherman v. Merit Sys. Prot. Bd., 530 F. App'x 940 (Fed. Cir.), reh'g denied (Fed. Cir. 2013). On February 8, 2013, the plaintiff appealed the MSPB's decision to the United States Court of Appeals for the Federal Circuit, which affirmed the decision of the MSPB in an unpublished

opinion. See Sherman v. Merit Sys. Prot. Bd., 530 F. App'x 940, 942 (Fed. Cir.) (per curiam), reh'g denied (Fed. Cir. 2013).

Subsequently, on October 31, 2016, the plaintiff filed a complaint against the Secretary of the Department of the Treasury in the United States District Court for the Central District of California, alleging that the IRS had violated the Age Discrimination in Employment Act (ADEA), the Rehabilitation Act, Title VII of the Civil Rights Act, and the FECA when the IRS separated the plaintiff from her employment. See Sherman v. Mnuchin, No. SA CV 16-1979 PA (KESx), 2017 WL 1927876, at *1 (C.D. Cal. May 9, 2017). The United States District Court for the Central District of California indicated the plaintiff's complaint was based on a "right to sue" letter issued by the Department of the Treasury after the Department of the Treasury had dismissed for lack of timeliness an Equal Employment Opportunity (EEO) complaint made by the plaintiff against the Department of the Treasury.[6] Id. at *2. In the United States District Court for the Central District of California, the plaintiff asserted that "she did not resign," "that the separation forms were improperly completed," "that she was not given disability retirement paperwork as requested," and that she was denied "a within-grade step increase." Id. The plaintiff alleged that the actions and omissions of the IRS "were discriminatory and have prevented her [plaintiff] from receiving certain benefits." Id. The United States District Court for the Central District of California found that the plaintiff's claims under the ADEA, the Rehabilitation Act, and Title VII of the Civil Rights Act were all barred because the plaintiff had failed to exhaust her administrative remedies within the statutory period for EEO claims, and that the court lacked jurisdiction over the plaintiff's FECA claim because the plaintiff had not raised a constitutional challenge to the Secretary of Labor's decision regarding her FECA benefits or claimed a violation of a "clear statutory mandate or prohibition." Id. at *3-5 (citing Markham v. United States, 434 F.3d 1185, 1187 (9th Cir. 2006)). Additionally, the United States District Court for the Central District of California found that the United States Court of Appeals for the Federal Circuit's decision in Sherman v. Merit Systems Protection Board, 530 F. App'x 940, affirming the MSPB's finding that the plaintiff had resigned voluntarily under the Stipulation, barred the United States District Court for the Central District of California from considering whether the plaintiff had voluntarily resigned from the IRS. Id. at *4-5. The United States District Court for the Central District of California also found that the earlier Stipulation entered into by plaintiff and the IRS barred the court from reviewing any of the plaintiff's discriminatory termination claims. See id. at *5.

---

[6] The Department of the Treasury had rejected the plaintiff's EEO complaint on August 1, 2016, because the plaintiff had failed to contact her EEO counselor within forty-five days of the alleged discriminatory conduct. See Sherman v. Mnuchin, 2017 WL 1927876, at *2. An EEO complaint that falls outside of the forty-five day period after the alleged discriminatory conduct may be dismissed entirely by the agency. 29 C.F.R. § 1614.107(a)(2) (2017). When a federal agency issues a final decision dismissing an EEO complaint in its entirety under 29 C.F.R. § 1614.107, the agency issues a right to sue letter informing the claimant of his or her right to appeal the claim to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in federal district court. See 29 C.F.R. § 1614.110(b) (2017).

On June 9, 2017, one month after the United States District Court for the Central District of California issued its decision in Sherman v. Mnuchin, the plaintiff filed a "retirement claim" with the OPM.[7] On November 20, 2017, before the OPM had responded to the plaintiff's "retirement claim," the plaintiff filed her complaint in this court in the above-captioned case. In her complaint in this court, the plaintiff requests that she be awarded "all the pension benefits as per FECA regulations," "costs and attorney fees, when represented,"[8] and "other relief as the Court deems just and proper." According to the plaintiff's complaint, "[v]enue in this court is proper under [sic] Tucker Act" and the "statutory basis for invoking jurisdiction is 5 U.S.C., and FECA a money-mandating statute."[9] The plaintiff asserts that she has suffered damages of "not less than" $183,456.00 and that her spouse has suffered damages of $65,856.00 in "past, present and future benefits in terms of monetary losses if the annuity is calculated per the SF50." The plaintiff attached a document to her complaint containing the plaintiff's self-authored calculations of her claimed amounts in the above-captioned case for her and her spouse's alleged monthly retirement annuity estimates under "Regular Retirement" and "disability retirement."

On January 19, 2018, the defendant filed a motion to dismiss the plaintiff's complaint in the above-captioned case pursuant to Rule 12(b)(1) (2018) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. The defendant asserts that the plaintiff's claim concerning her civil service retirement benefits "must be raised initially with OPM, and OPM's decisions may be appealed only to the MSPB, subject to further review by the Federal Circuit." Additionally, the defendant states that any of the plaintiff's claims relating to the FECA or for an "injury incurred in the performance of her duties" must be raised with the Secretary of Labor and further asserts that this "Court lacks jurisdiction to entertain stand-alone due-process claims because the Due Process Clauses of the Fifth and Fourteenth Amendments are not money-mandating."

---

[7] The plaintiff's complaint does not provide additional information regarding the details of plaintiff's "retirement claim" submitted on June 9, 2017. In her opposition to defendant's motion to dismiss, however, the plaintiff states that "[h]er application was for Deferred Retirement."

[8] Plaintiff is appearing pro se in the above-captioned case currently before the court, although she did seek appointment of a pro bono attorney.

[9] The plaintiff does not identify in her complaint which sections of Title Five of the United States Code or of the FECA she is attempting to rely on as the basis for jurisdiction. The only indication that the plaintiff gives as to which sections of Title Five of the United States Code she is referring is in her opposition to defendant's motion to dismiss, in which plaintiff declares that "5 U.S.C. § § 8101 to 9009" is a money-mandating statute and further states under the heading "Money Mandating Statute" that "5 U.S. Code §§ 8401 and 8402 deals [sic] with [sic] Federal Employees' Retirement System."

The defendant attached to its motion to dismiss two letters which the defendant asserts both were sent to the plaintiff by the OPM on January 16, 2018 (the OPM election letters), after plaintiff filed her complaint in this court. According to the defendant, "[t]he letters are dated January 13 and January 18, 2018, but were all sent on January 16, 2018." (internal reference omitted). The defendant asserts that the OPM has not yet adjudicated plaintiff's June 9, 2017 claim, but that the OPM did send the plaintiff the two OPM election letters requesting that the plaintiff make certain elections regarding her FECA benefits and retirement benefits. In the OPM election letter dated January 13, 2018, the OPM notified plaintiff that her "CSRS or FERS annuity" has been suspended while the plaintiff receives compensation through the OWCP and requested that plaintiff make an election to receive either the plaintiff's FECA benefits through the OWCP or her FERS annuity, which the OPM indicated would be a monthly benefit of $1,353.00. The January 13, 2018 OPM election letter also contained a form on which the plaintiff could make an election between her FECA benefits and her FERS benefits. In the OPM election letter dated January 18, 2018, the OPM requested that the plaintiff make elections regarding her health benefits and life insurance and included a form for the plaintiff to make such elections, as well as an application for "Immediate Retirement."

On June 4, 2018, after the plaintiff filed, and the court granted, multiple requests for enlargement, the plaintiff filed her opposition to defendant's motion to dismiss in this court. In her opposition to defendant's motion to dismiss, the plaintiff states that she has "no claim based on the Federal Employees Compensation Act," indicates that she has not asserted a due process claim, and states that she "has no disability annuity retirement claim." Rather, the plaintiff argues that her "only claim" is for an "estimate of her annuity which is covered by other Sections of 5 U.S.C." and that her claims "rely on the review of the OPM estimate of her annuity whether or not enhanced rate is applied in the calculation of her monthly pension benefit." The plaintiff argues that she should be eligible for an "enhanced rate" in the computation of her FERS retirement annuity because she currently receives compensation through the OWCP,[10] and that the $1,353.00 per month annuity offered by the OPM in the OPM election letters is "grossly and unfairly understated." The plaintiff also argues that the life insurance amount outlined in the OPM's January 18, 2018 letter is "grossly understated." The plaintiff further asserts that the OPM election letters contain "no information on how the annuity was estimated and what documents it is based on," and that "[t]he estimate which is supposed to be the main tool for the plaintiff to base a meaningful decision on whether she should continue with her Federal Employees'

[10] The "enhanced rate" to which plaintiff appears to refer is outlined in an OPM "Benefits Administration Letter" dated December 7, 2004, which the plaintiff attached as an exhibit to her opposition to defendant's motion to dismiss. The "Benefits Administration Letter" provides that certain federal employees are eligible for an "enhanced annuity" after Congress passed Public Law 108-92, which is now codified at 5 U.S.C. § 8415(n) (2012). The "Benefits Administration Letter" indicates that "[t]he law allows a 1 percent annuity enhancement for certain Federal Employees' Retirement System (FERS) employees receiving disability compensation from the Office of Workers' Compensation Programs (OWCP)," and summarizes the eligibility requirements for the enhanced annuity and how the enhanced annuity is computed.

Compensation Benefits(FECA) [sic] or receive Civil Service Annuity (CSRS or FERS) is not certified." According to Ms. Sherman, the "OPM's failure to provide the plaintiff an estimate deprived the plaintiff to appeal internally so far," but the annuity estimate in the OPM election letters has allowed her to "file for reconsideration with the Office of Merit Systems Oversight and Effectiveness." The plaintiff alleges that she filed a claim with the Office of Merit Systems Oversight and Effectiveness on March 23, 2018, but that "[t]he OPM so far hasn't even referred her to a Specialist."

The plaintiff also requests in her opposition to defendant's motion to dismiss that this court order the filing of an administrative record from the OPM. The plaintiff claims that the OPM election letters attached to the defendant's motion to dismiss are insufficient under RCFC 52.1 (2018)[11] because the OPM election letters are "not certified" and contain "one sentence on the estimate and 2 words on Insurance from Plaintiff's civil service records." The plaintiff states that she "requires all records of her personnel file as well as all records pertaining to the estimate of her annuity to decide her claim" and requests that this court "order the filing of [sic] administrative record." The plaintiff also requests leave to amend her complaint "[s]hould this Court were to deem [sic] that the plaintiff provide further evidence to establish jurisdiction and that could be remedied by amending the complaint with facts sufficient to establish jurisdiction upon which relief can be granted **after the administrative file is filed**." (emphasis in original).

On June 12, 2018, the defendant filed a reply in support of its motion to dismiss, in which the defendant notes that the plaintiff stated in her opposition to defendant's motion to dismiss that she is not pursuing a FECA claim or a due process claim in the above-captioned case. The defendant reasserts that this court lacks jurisdiction over the plaintiff's claim that her monthly retirement annuity should be higher because, contrary to the plaintiff's position, Title 5 of the United States Code is not money-mandating. The defendant, again, asserts that "claims regarding the amount of a Federal retirement annuity must be raised initially with the Office of Personnel Management (OPM), and OPM's decisions may be appealed only to the Merit Systems Protection Board (MSPB), subject to further review by the Federal Circuit." The defendant also argues that the government is not required to file an administrative record because "[p]roceedings before OPM are irrelevant here because the Court lacks jurisdiction to review any decisions of OPM regarding Ms. Sherman's retirement benefits."[12] Finally, the defendant asserts that the plaintiff should not be granted leave to amend her complaint because the "jurisdictional problems here are incurable."

---

[11] RCFC 52.1(a) states: "When proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court." RCFC 52.1(a).

[12] Because, as is discussed below, plaintiff's case is being dismissed for lack of jurisdiction, plaintiff's request for administrative record documents is moot.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by pro se plaintiffs is sufficient to invoke review by a court, pro se plaintiffs are entitled to a more liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

The defendant has moved to dismiss the plaintiff's complaint under RCFC 12(b)(1) because, according to the defendant, this court does not have subject matter jurisdiction over the plaintiff's retirement claims involving the FERS. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied 545 U.S. 1127 (2005); see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2012), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

> department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-

> does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp., 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); see also Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.)

(citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2018); Fed. R. Civ. P. 8(a)(1), (2) (2018); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

As indicated above, the defendant asserts in its motion to dismiss that this court "lacks jurisdiction to entertain Ms. Sherman's claims regarding her retirement pension." The defendant argues that any claims relating to the plaintiff's retirement pension "must be raised initially with OPM, and OPM's decisions may be appealed only to the MSPB, subject to further review by the Federal Circuit." According to defendant, this court lacks jurisdiction "when the underlying dispute rests on personnel action subject to OPM administration, and Merit Systems Protection Board ('MSPB') review. . . . this Court is barred from adjudicating Plaintiffs' retirement related claims." (omission in original) (quoting Agee v. United States, 77 Fed. Cl. 84, 88, 92 (2007)). Defendant asserts that the plaintiff is covered only by the FERS, and that the FERS is administered by the OPM and not subject to this court's review. The plaintiff responds that this court has jurisdiction under "5 U.S.C. Federal civilian employment" and FECA, and further states in her opposition to defendant's motion to dismiss that the "Civilian Pay Act and 5 U.S.C. § § 8101 to 9009 covering Retirement Act (1920)" are money-mandating statutes which create jurisdiction in this court. The plaintiff cites to Lindahl v. Office of Personnel Management, 470 U.S. 768 (1985), and Dismuke v. United States, 297 U.S. 167, reh'g denied, 297 U.S. 167 (1936), as support for her assertion that this court has jurisdiction over retirement claims.

Two retirement benefits systems are raised by Ms. Sherman in her opposition to defendant's motion to dismiss: the FERS, outlined in Title 5, Chapter 84 of the United States Code, and the CSRS, outlined in Title 5, Chapter 83 of the United States Code. See 5 U.S.C. §§ 8331-8351 (2012), 5 U.S.C. §§ 8401-8480 (2012); see also Agee v.

United States, 77 Fed. Cl. at 91 ("For federal employees, these benefits are determined pursuant to either the Civil Service Retirement System (CSRS), 5 U.S.C. §§ 8331-8351, or the Federal Employees' Retirement System (FERS), 5 U.S.C. §§ 8401-8479 (2000)."). The OPM has the authority to determine benefits under both the FERS and the CSRS. See 5 U.S.C. § 8347(a)-(b); 5 U.S.C. § 8461(b)-(c); see also Adams v. Dep't of Def., 688 F.3d 1330, 1335 (Fed. Cir. 2012) ("We take note that OPM is charged with administering claims under chapter 83, and chapter 84 relating to the Federal Employees Retirement System (FERS)." (citing 5 U.S.C. § 8461; and 5 U.S.C. § 8347(b)(1)(B)(iv)-(v))); Agee v. United States, 77 Fed. Cl. at 92 (stating that the OPM has the authority to adjudicate all claims arising under the FERS and the CSRS). If a federal employee elects to appeal an OPM decision regarding the employee's FERS benefits, the MSPB has the exclusive authority to hear such claims. See 5 U.S.C. § 8461(e)(1) ("[A]n administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter [Chapter 84] administered by the Office [of Personnel Management] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board."). Furthermore, the United States Court of Appeals for the Federal Circuit has the sole authority to review "a final order or final decision of the [Merit Systems Protection] Board" with the exception of matters identified in 5 U.S.C. § 7703(b). See 5 U.S.C. § 7703(b) (2012). Because the MSPB has general authority to review an administrative action made by the OPM under FERS, and the United States Court of Appeals for the Federal Circuit has jurisdiction to review MSPB decisions regarding such retirement matters, this court has consistently held that it does not have authority to hear claims arising under the CSRS or the FERS. See 5 U.S.C. § 8461(e)(1); see also Kogan v. United States, 112 Fed. Cl. 253, 267 (2013) (declining to review the plaintiff's "requests that the court determine the amount of his future pension" under the FERS); Agee v. United States, 77 Fed. Cl. at 92 (stating that the plaintiffs "should seek review and revision of their [CSRS or FERS] benefits with OPM"); McNeil v. United States, 78 Fed. Cl. 211, 236 (2007) ("Congress established a comprehensive administrative and judicial framework for adjudicating CSRS benefit claims that precludes this court's exercise of jurisdiction."), aff'd, 293 F. App'x 758 (Fed. Cir. 2008); Ferreiro v. United States, 72 Fed. Cl. 1, 4 (2006) (concluding that "plaintiffs in this case must comply with the comprehensive scheme established for obtaining CSRS benefits, which does not include filing suit in this court"), aff'd, 501 F.3d 1349 (Fed. Cir. 2007). This court, therefore, concludes that it lacks jurisdiction over plaintiff's retirement claims arising under the FERS.

The plaintiff cites Lindahl v. Office of Personnel Management, 470 U.S. 768, as an example of this court's "tradition and history" in "handling subject matter jurisdiction such as the plaintiff's case." The passage quoted by the plaintiff in her opposition to defendant's motion to dismiss states:

> The Civil Service Retirement Act (Retirement Act). Government employees who are covered by the Retirement Act are required to contribute a portion of their salaries to the Civil Service Retirement and Disability Fund. 5 U. S. C. §§ 8334(a), (b). The amount of retirement annuity is based on the employee's average pay and years of federal service. § 8339. The Retirement Act provides for several types of annuities; at issue here are

> disability retirement annuities. Pursuant to § 8337, a covered employee who has completed at least five years of federal civilian service is eligible for an immediate annuity if found "disabled," whether he is retired on his own application ("voluntary" retirement) or on the application of his employing agency ("involuntary" retirement). § 8337(a).
>
> Although the Retirement Act at no time has contained a general judicial review provision, this Court concluded almost 50 years ago that a retired employee may secure judicial review of an agency denial of his annuity claim by invoking the district courts' Tucker Act jurisdiction to entertain monetary claims against the United States. Dismuke v. United States, 297 U. S. 167 (1936). The Court reasoned:
>
>> "[I]n the absence of compelling language, resort to the courts to assert a right which the statute creates will be deemed to be curtailed only so far as authority to decide is given to the administrative officer. . . . If he is authorized to determine questions of fact his decision must be accepted unless he exceeds his authority by making a determination which is arbitrary or capricious or unsupported by evidence . . . , or by failing to follow a procedure which satisfies elementary standards of fairness and reasonableness essential to the due conduct of the proceeding which Congress has authorized. . . ." Id., at 172.

Lindahl v. Office of Pers. Mgmt., 470 U.S. at 771-73 (alterations and omissions in original) (footnote omitted).[13] The portion of Lindahl quoted by the plaintiff, however, is an introductory paragraph discussing the Civil Service Retirement Act (Retirement Act), which, at one time, permitted the United States Court of Claims to review agency denials of annuity claims under the then United States Court of Claims' and the United States District Courts' Tucker Act jurisdiction. See id. at 771-73. Lindahl, however, goes on to state that the Civil Service Reform Act of 1978 (CSRA) created the OPM and granted the OPM authority to administer the Retirement Act, and that the CSRA also created the MSPB, which was given the authority to review the OPM's decisions. See id. at 773-74. Subsequently, the Federal Courts Improvement Act of 1982 (FCIA) established the United States Court of Appeals for the Federal Circuit and granted the United States Court of Appeals for the Federal Circuit jurisdiction over the appellate matters previously reviewed by the United States Court of Claims. See id. at 775. The FCIA also abolished the United States Court of Claims and created the United States Claims Court,[14] which inherited the

[13] The plaintiff's quotation of Lindahl in her opposition to defendant's motion to dismiss omits the phrase "disability retirement" and the phrase "[a]lthough the Retirement Act at no time has contained a general judicial review provision." Lindahl v. Office of Pers. Mgmt., 470 U.S. at 772.

[14] Subsequently, the United States Claims Court was renamed the United States Court of Federal Claims in 1992. See Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902, 106 Stat. 4506, 4516 (1992).

United States Court of Claims' Tucker Act jurisdiction under 28 U.S.C. § 1491. Id. at 795 n.33, 796. Thus, Lindahl, in fact, indicates that the United States Court of Federal Claims currently does not have jurisdiction to hear the plaintiff's retirement claim. See id. at 791-92 (stating that permitting review of MSPB decisions in the United States Claims Court "does not accord with the jurisdictional framework established by the CSRA or the FCIA").

Although the plaintiff and the defendant acknowledge that the plaintiff has not made a FECA claim in the above-captioned case, in her complaint the plaintiff states that "[t]he statutory basis for invoking jurisdiction is 5 U.S.C., and FECA a money-mandating statute." FECA covers employees who are injured or killed during the course of their federal employment. See 5 U.S.C. § 8102(a) (2012). Should an employee seek compensation under FECA, FECA becomes the employee's exclusive remedy for a workplace injury and bars judicial review. See 5 U.S.C. § 8116(c) (2012); see also Bowling v. United States, 93 Fed. Cl. 551, 557 (2010) (citations omitted), recons. denied 93 Fed. Cl. 551 (2010); Gallo v. United States, 76 Fed. Cl. 593, 598 (2007), aff'd, 529 F.3d 1345 (Fed. Cir. 2008). The Secretary of Labor makes a finding regarding whether an individual will receive FECA payments and hears any challenges based on FECA claims. See 5 U.S.C. § 8124(a)-(b) (2012). The Secretary of Labor also may review the employee's FECA award and choose to "end, decrease, or increase the compensation previously awarded" or "award compensation previously refused or discontinued." 5 U.S.C. § 8128(a) (2012). Any action taken by the Secretary of Labor is "final and conclusive for all purposes and with respect to all questions of law and fact" and is "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Consequently, FECA does not provide this court with jurisdiction to hear the plaintiff's claim. See Pueschel v. United States, 297 F.3d 1371, 1377 (Fed. Cir. 2002) (concluding that the United States Court of Federal Claims properly dismissed the plaintiff's FECA claims for lack of jurisdiction); see also Bowling v. United States, 93 Fed. Cl. at 558 ("[T]his court has no authority to hear or administer FECA claims."); Collins v. United States, 35 Fed. Cl. 620, 625-26 (1996) ("This court follows the abundance of precedent and finds that it does not have jurisdiction over plaintiff's FECA claims because it ultimately questions the Secretary's discretionary judgment of which sections of the Act apply to the claimant and whether denial of full payment under section 8133 was valid.").

Ms. Sherman also requests that this court "order the filing of [sic] administrative record" from the OPM under RCFC 52.1. The plaintiff claims that the documents attached by the defendant to its motion to dismiss, which include the SF 50 separating the plaintiff from her employment with the IRS and the OPM election letters allegedly sent to the plaintiff on January 16, 2018, are administrative records that contain "no information on how the annuity was estimated," are "not certified," and do "not remotely comply with RCFC 52.1." The plaintiff requests that this court order that the OPM produce an administrative record so that the plaintiff may make "a meaningful decision on whether she should continue with her Federal Employees' Compensation Benefits(FECA) [sic] or receive Civil Service Annuity (CSRS or FERS)." The defendant, however, argues that "[t]he Government does not need to file an administrative record," and that any "[p]roceedings before OPM are irrelevant here because the Court lacks jurisdiction to review any decisions of OPM regarding Ms. Sherman's retirement benefits."

As support for her request that this court order the filing of an administrative record, the plaintiff cites an unreported order in Freeman v. United States, a military pay case in which a judge of the United States Court of Federal Claims required the defendant to provide an administrative record under RCFC 52.1(a). See Freeman v. United States, No. 10-270C, 2010 WL 4058634, at *1 (Fed. Cl. Oct. 13, 2010). In Freeman v. United States, the United States Court of Federal Claims ordered the government to produce an administrative record when the documents submitted by the defendant were "manifestly insufficient" for the reviewing court to analyze "defendant's motion to dismiss for lack of subject matter jurisdiction." See id. In the above-captioned case, however, the plaintiff's claims concern her eligibility for a higher retirement benefit under FERS, an area over which this court lacks jurisdiction, and the production of an administrative record would not assist the court or remedy the jurisdictional defects in the plaintiff's claims.

The plaintiff also requests leave to amend her complaint "[s]hould this Court were to deem [sic] that the plaintiff provide further evidence to establish jurisdiction and that could be remedied by amending the complaint with facts sufficient to establish jurisdiction upon which relief can be granted **after the administrative file is filed**." (emphasis in original). Although the plaintiff correctly notes that this court should "freely give leave when justice so requires," the court also may reject a plaintiff's request for leave to amend a complaint if the amendment would be futile. See RCFC 15(a)(2) (2018); see also A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1158 (Fed. Cir. 2014) ("In the absence of any apparent or declared reason—such as . . . futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)))); Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1353 (Fed. Cir. 2006) ("Nonetheless, leave to amend may be denied if the court finds that there has been undue delay that would prejudice the nonmoving party, that the moving party has acted in bad faith, or that the amendment would be futile." (citing Foman v. Davis, 371 U.S. at 182)); Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. 401, 403 (2017) ("The Court should deny leave to amend if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile." (citation omitted)); Advanced Aerospace Techs., Inc. v. United States, 130 Fed. Cl. 564, 568 (2017) ("Of course, when a proposed amendment is futile, leave to amend a pleading should not be granted." (citing Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04, reh'g denied (Fed. Cir. 1989))). An amendment is futile if "it would not survive a motion to dismiss." Sonoran Tech & Prof'l Servs., LLC v. United States, 133 Fed. Cl. at 403 (citing Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014)); see also Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354-55 ("When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." (citing Norbeck v. Davenport Cmty. Sch. Dist., 545 F.2d 63, 70 (8th Cir.1976), cert. denied 431 U.S. 917 (1977); and Wilson v. Am. Trans Air, Inc., 874 F.2d 386, 392 (7th Cir.1989))); Hanover Ins. Co. v. United States, 134 Fed. Cl. 51, 63 (2017) ("An amendment is futile if it would

not survive an RCFC 12(b)(6) motion to dismiss." (citation omitted)). In the above-captioned case, regardless of whether the plaintiff were to submit an amendment to her complaint to include additional facts, this court lacks jurisdiction to review the allegations raised by the plaintiff's complaint.

## CONCLUSION

The court, therefore, **GRANTS** defendant's motion to dismiss. The plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**